OPINION OF THE COURT
Fred W. Eggert, J.
The following constitutes the decision and order of the court..
The principal question presented by this case is whether Payton v New York (445 US 573) decided April 15, 1980, (which invalidates warrantless, nonexigent, nonconsensual entry into a defendant’s residence to make an arrest) is retroactive to arrests made prior to April 15, 1980 whose "fruits” are offered at trial subsequent to April 15, 1980.
BACKGROUND
This defendant was indicted, with others, for murder in the second degree and robbery in the first degree. He is accused of killing Herbert Finn during a robbery of Finn and other persons.
Beginning on February 27, 1980, an omnibus pretrial suppression hearing was held before Honorable Walter Schackman, who ruled that a statement made by this defendant to the police at the time of his arrest on November 7, 1979 was admissible. On April 16, 1980, the very day upon which a detective was to testify at trial concerning the statement, it was reported in the media that on the previous day the Supreme Court of the United States had decided Payton v *965 New York (supra). Defendant immediately renewed his motion to suppress on the grounds that his statement was the fruit of an unlawful, nonemergency, warrantless arrest at his residence. Both sides stipulated to have this court decide this issue based on the pertinent parts of the transcript of the omnibus hearing before Justice Schackman.
FINDINGS OF FACT
On November 6, 1979, investigation of the Finn murder led to one Coker, a codefendant in this case who has since pleaded guilty. Coker admitted his involvement in the crime and stated that the actual shooter of Finn was his acquaintance "Woody”, a male black, about 20 years old, with a last name ending in "Ford”. At approximately midnight, Coker led detectives to an address in Mount Vernon and pointed out the exact location of "Woody’s” apartment. Coker also stated that "Woody” had guns and was likely to use them.
Between midnight and 3:00 a.m., going into November 7, a group of 12 to 14 New York City and Mount Vernon police officers assembled and made plans for the arrest of "Woody”. No arrest or search warrant was sought or obtained.
At about 3:00 a.m. four officers went to the identified apartment, and one of them knocked on the door. The door opened and defendant Beckford appeared in the doorway. One detective said "Are you Woody?” and the defendant said “Yes, I am.” The officers, who were pointing shotguns and handguns at the defendant, immediately seized him. Defendant was placed under arrest at that time and taken into the apartment to get dressed. Another detective then took the defendant downstairs to the street and advised him of his rights in the usual form, whereupon defendant explicitly waived all the rights and voluntarily made a brief exculpatory statement, denying any involvement in the murder. (The People now seek to offer this statement on rebuttal due to a material contradiction between defendant’s statement and the testimony of two witnesses called by the defandant, who did not testify in his own behalf.)
I find that the police had probable cause to arrest the defendant at approximately midnight when Coker, a participant in the crime, pointed out the location of the apartment. I find that the police had sufficient opportunity to obtain or attempt to obtain an arrest warrant between midnight and 3:00 a.m. I further find that a warrantless arrest was made in *966 good faith reliance on New York law as it was on the date of the arrest.
CONCLUSIONS OF LAW
There is no question that this arrest was valid under New York law prior to April 15, 1980, the date of Payton v New York (445 US 573, supra). The police had probable cause to arrest the defendant, based on a codefendant’s statements (People v Berzups, 49 NY2d 417, 427), and a reasonable belief that the defendant was at his own residence, thus permitting warrantless entry to effect his arrest (CPL 140.15, subd 4; People v Payton, 45 NY2d 300).
Assuming the United States Supreme Court’s April 15, 1980 decision in Payton v New York (supra) to be relevant to the validity of this arrest, and further assuming it to be relevant to the admissibility of the subsequent statement (see Wong Sun v United States, 371 US 471), the primary issue here is whether an April 15, 1980 decision shall be applicable to an arrest occurring on November 7, 1979, whose "fruit” is being offered at trial on April 16, 1980. (There is no separate issue arising from the fact that the suppression hearing was closed prior to April 15, since it has been reopened by stipulation and is being treated as a post-Payton hearing on a pre-Payton arrest.)
In general, every case must be decided upon the decisional law that exists when the case is before the court, not necessarily as of the time of the events in controversy (People v Reynolds, 25 NY2d 489, 494). A major area of exception to this rule is that of constitutional decisions which create new procedural safeguards for criminal defendants, overturning past law enforcement practices which had been permitted by prior decisional or statutory law (see People v Morales, 37 NY2d 262, 268). Such a case is Payton v New York (supra) which specifically superseded the law of New York and 23 other States (Payton v New York, 445 US 573, —, 48 USLW 4375, 4381, supra).
In such cases various forms of retroactivity have been employed. At one extreme, the benefits of new constitutional rules addressed to the very reliability of the fact-finding process are sometimes extended, through the habeas corpus power, even to persons in custody under final judgments of conviction whose appeals had run their course (see, e.g., Doughty v Maxwell, 376 US 202; Eskridge v Washington *967 Prison Bd., 357 US 214). Other rules have been made applicable to cases pending on appeal at the time of the new decision (e.g., Linkletter v Walker, 381 US 618), or only to cases tried after the new decision (e.g., Johnson v New Jersey, 384 US 719) or only to cases in which the unconstitutional event occurred after the new decision (e.g., Stovall v Denno, 388 US 293).
While there are no definitive principles of retroactivity (People v Morales, supra, p 269), it is quite clear that the last approach, which turns on the date of the unconstitutional event, is now favored by the Supreme Court of the United States in search and seizure cases (United States v Peltier, 422 US 531; Williams v United States, 401 US 646; cf. Michigan v De Fillippo, 443 US 31). The reason for focusing on the date of the search in any case involving the Fourth Amendment exclusionary rule is that "we cannot regard as blameworthy those parties who conform their conduct to the prevailing statutory or constitutional or statutory norm * * * If the purpose of the exclusionary rule is to deter unlawful police conduct then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.” (United States v Peltier, supra, p 542; see, also, United States v Corcione, 592 F2d 111, 118, cert den 440 US 975; cf. United States v Tucker, 610 F2d 1007.)
Our Court of Appeals, while expressing a preference for the time-of-trial approach over the time-of-search approach, has expressly declined to deviate from the Federal time-of-search rule. (People v Buia, 34 NY2d 529, see, also, People v Feinlowitz, 29 NY2d 176.) Therefore, applying pre-Payton law, this court finds that this defendant’s warrantless arrest was valid when made and declines to suppress any alleged "fruits” of that arrest.
If Payton (445 US 573, supra) applied, the same result would not appear to be possible. Numerous issues are raised by the application of Payton to the facts of this case.
At the outset, the District Attorney suggests that his offer of the statement only as rebuttal of defendant’s case obviates the necessity of inquiry into its admissibility. This lacks merit since the defendant did not testify in this case. The principle of Harris v New York (401 US 222) and Walder *968 v United States (347 US 62) permitting impeachment use of suppressible evidence applies only where the defendant personally testifies in his own behalf (United States v Nussen, 531 F2d 15, cert den 429 US 839).
Another "threshold” issue to be disposed of is whether Payton (supra), which speaks of warrantless, nonconsensual entry into a suspect’s residence, and which invalidated the actual entries into Payton and Riddick’s homes, applies to the instant case, where Beckford was seized on the threshold of his apartment. (See United States v Santana, 427 US 38.) Looking carefully at the facts of this case, the gunpoint seizure of Beckford in his doorway when he came to the door can only fall into the second portion of the Supreme Court’s dichotomy between valid "warrantless arrests in a public place” and "warrantless invasions of the privacy of the home” (Payton v New York, 445 US 573, —, 48 USLW 4375, 4376, supra).
It should be noted that the Supreme Court has not placed arrests on third parties’ premises in either category (Payton v New York, 445 US, at p —, 48 USLW, at p 4378).
Turning to whether, under Payton, the police should have obtained or attempted to obtain a warrant before arresting this defendant, it is noted that the Supreme Court in Payton (445 US, at p —, 48 USLW, at p 4378) chose not to establish guidelines for the "exigent circumstances” that would justify a warrantless home arrest, except to imply that the rules for warrantless home searches would apply. The burden of justifying a warrantless search based on exigent circumstances is on the People (Matter of Kwok T., 43 NY2d 213, 220), and on this record, that burden was not met, in view of the intentional three-hour delay in arresting the defendant during which time various officers were available to seek an arrest warrant. The District Attorney’s contention that a warrant could not have been obtained until the defendant admitted to being "Woody”, at which time the danger of flight would have required instant arrest, is without merit since a warrant for "John Doe Woody” giving an address and description would have been authorized by statute (CPL 120.10, subd 2). A more troubling question is whether the statute would permit an arrest warrant, as opposed to a search warrant, to be issued in the early morning hours after the courts were closed. Filing of an accusatory instrument, which arguably can only be done at the courthouse during normal hours with the appropriate *969 court personnel in attendance, is a mandatory prerequisite for issuance of an arrest warrant (CPL 120.10, subd 1; 120.20, subd 1). Nevertheless, the statutory scheme seems to contemplate the possibility of an accusatory instrument being filed at night at a Judge’s home or someplace else (see CPL 100.55, subd 7; 120.40). Clarification and simplification of arrest warrant procedures to facilitate compliance with Payton (supra) is a matter which invites legislative attention.
Since under all the circumstances the warrantless entry was not justified, the remaining issue is whether the exculpatory but damaging statement is to be suppressed as "fruit” of the illegality (Wong Sun v United States, 371 US 471, 488, supra). Modern cases have focused on the causal connection between the illegality and the "fruit” and have employed a three-part test for determining whether the "fruit” was obtained by exploitation of the illegality: (1) the closeness in time of the illegality and the "fruit”, (2) the presence of intervening circumstances, (3) the purpose and flagrancy of the official misconduct (Dunaway v New York, 442 US 200, 217-219; Brown v Illinois, 422 US 590, 603; People v Martinez, 37 NY2d 662, 666). While emphasis has been placed on the third factor, these decisions have not yet gone so far as to permit the police officers’ good faith belief in the validity of the arrest and their lack of intent to exploit their own misconduct (see Michigan v Tucker, 417 US 433, 448; United States v Preston, 608 F2d 626, 633-635; People v Martinez, 37 NY2d 662, 669-671, supra; People v Tindal, 69 AD2d 58, 62; see, also, Michigan v De Fillippo, 443 US 31, supra) to attenuate the taint when the statement immediately follows the search, and there are no intervening circumstances (see Dunaway v New York, 442 US 200, 219-220, supra [Stevens, J., concurring]).
Therefore, on the facts of this case, the detectives’ obvious good faith in making this arrest with ample probable cause and in reliance on existing New York law would still not appear to distinguish defendant’s voluntary, but immediate statement from that of James Wah Toy which was suppressed in Wong Sun (371 US, at pp 486-487, supra). Without discussing good faith, the Supreme Court of Pennsylvania, in adopting its own Patyon -type rule, has suppressed a statement obtained under similar facts (Commonwealth v Williams, 483 Pa 293).
In view of all the circumstances the statement’s admissibility would be doubtful at best, under Payton (supra). Never the- *970 less, since the arrest occurred prior to the date of the decision in Payton, the statement may be received in evidence. Accordingly, the renewed motion to suppress is denied.