Rockingham
No. 83-389

## The State of New Hampshire

v.

## William F. Morse

August 10, 1984

*Gregory H. Smith,* attorney general (*Robert B. Muh,* attorney, on the brief and orally), for the State.

*Joanne S. Green,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, J.   The defendant, William F. Morse, after a jury trial in Superior Court (*Nadeau,* J.), was convicted on charges of aggravated felonious sexual assault, RSA 632-A:2 (Supp. 1983), kidnapping, RSA 633:1, and first degree assault, RSA 631:1 (Supp. 1983). On appeal, he argues that certain items of evidence admitted at trial should have been excluded, under the doctrine of *Wong Sun v. United States,* 371 U.S. 471, 485 (1963), because the police seized them after entering Morse's motel room and arresting him without a warrant. The question before us is whether the entry violated the defendant's rights under the fourth and fourteenth amendments to the United States Constitution, as construed in *Payton v. New York,* 445 U.S. 573 (1980). We reverse and remand the case to the superior court for a new trial.

In the early morning hours of October 29, 1982, the alleged victim in this case reported to the Portsmouth police that the defendant

had raped her earlier that evening in a motel room in Seabrook. A Portsmouth police officer drove the victim back to the motel and notified Seabrook police. Eventually, four Seabrook officers arrived at the motel and questioned the victim and the motel manager.

After determining that the defendant was still in the motel room, and that the victim wished to pursue her complaint, two Seabrook officers went to the defendant's room to arrest him. This occurred approximately one hour after the Portsmouth officer had arrived at the motel with the victim. At no time did any of the officers attempt to obtain a warrant.

The officers knocked on the door, and the defendant opened it. He was nude. The police identified themselves, and the defendant said, "I guess I know why you are here." He tried to shut the door, but one of the officers prevented this by putting his foot between the door and the door jamb. The police then entered the room and informed the defendant that he was under arrest.

While the defendant was dressing, the officers noticed a blue napkin or handkerchief on the floor. The alleged victim had told them that the defendant had placed a blue cloth in her mouth to prevent her from screaming. They seized the cloth, and also seized a large quantity of loose hair, which was visible on the bedsheets.

The defendant was charged with aggravated felonious sexual assault, kidnapping, and first degree assault. The cloth and the hair were admitted into evidence at trial over the defendant's objection. He was convicted on all three charges. He then brought this appeal, alleging that his fourth amendment rights under the Federal Constitution had been violated.

■ The fourth amendment to the Constitution of the United States provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

If the defendant was arrested in violation of his fourth amendment rights, then any evidence seized pursuant to that arrest would be inadmissible at his trial. *Wong Sun v. United States*, 371 U.S. at 485; *State v. Flynn*, 123 N.H. 457, 467, 464 A.2d 268, 274 (1983); *see also Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

■ In 1980 the United States Supreme Court held that "the Fourth Amendment . . . prohibits the police from making a war-

rantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York*, 445 U.S. at 576. The State concedes that in this case the defendant's motel room was the equivalent of his home for all relevant purposes. *See United States v. Bulman*, 667 F.2d 1374, 1383–84 (11th Cir.), *cert. denied sub nom. United States v. Howard*, 456 U.S. 1010 (1982). The State's argument that the entry here was justified is based on an alleged similarity between this case and *United States v. Santana*, 427 U.S. 38 (1976).

In that case, the police had just arrested the seller after an under-cover drug deal. The seller, who had obtained the drugs at the defendant Santana's house, told the police that Santana had the money from the transaction. The police drove to Santana's house and saw her standing in the doorway, in a position where "one step forward would have put her outside, one step backward would have put her in the vestibule of her residence." *Id.* at 40 n.1. The officers got out of their van and shouted "police," at which point Santana retreated into the vestibule. The officers pursued and arrested her inside the house.

In its opinion, the Court first noted that it had recently upheld the warrantless arrest upon probable cause of an individual in a public place. *Id.* at 42 (citing *United States v. Watson*, 423 U.S. 411 (1976)). It then held that

> "it is . . . clear that under the cases interpreting the Fourth Amendment Santana was in a 'public' place [when the police first sought to arrest her]. She was not in an area where she had any expectation of privacy. 'What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment pro-tection.' *Katz v. United States*, 389 U.S. 347, 351 (1967). She was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house."

*United States v. Santana, supra* at 42.

The Court concluded that Santana could not thwart what would otherwise have been a proper arrest under *Watson*, merely by retreating into her house. Once Santana had seen the police, the situation became one of "hot pursuit," in which the police had a "need to act quickly" both to prevent Santana's escape and to pre-vent her from destroying evidence. *Id.* at 42–43. It was these exigent circumstances that justified what would otherwise be an unlawful entry.

In this case, the State argues that the defendant put himself in a

public place when he opened the door of his room, and that his attempt to retreat, like Santana's, created "the sort of emergency or dangerous situation, described in our cases as 'exigent circumstances,' that would justify a warrantless entry into a home for the purpose of either arrest or search." *Payton v. New York*, 445 U.S. at 583.

Jurisdictions are split on whether *Payton* invalidates warrantless arrests occurring immediately after the defendant opened a door in response to a police knock. Before and after *Payton*, a number of courts have upheld such arrests, citing *Santana* for the proposition that "[a] doorway . . . is a public place," *United States v. Whitten*, 706 F.2d 1000, 1015 (9th Cir. 1983), *cert. denied*, 104 S. Ct. 1593 (1984), and stressing that the arrest in each case was effected without the police having to enter the defendant's residence. *Id.; United States v. Botero*, 589 F.2d 430, 432 (9th Cir.), *cert. denied*, 441 U.S. 944 (1979); *United States v. Herring*, 582 F.2d 535, 543 (10th Cir. 1978); *People v. Burns*, 200 Colo. 387, 390, 615 P.2d 686, 689 (1980); *People v. Schreiber*, 104 Ill. App. 3d 618, 623–24, 432 N.E.2d 1316, 1320–21 (1982), *cert. denied*, 103 S. Ct. 1214 (1983); *see also State v. Patricelli*, 324 N.W.2d 351, 352–54 (Minn. 1982) (defendant came to door after another man opened it and called him).

Other courts, however, have held that "threshold arrests" of this type are invalid under *Payton. United States v. McCool*, 526 F. Supp. 1206, 1208–09 (M.D. Tenn. 1981) (invalid unless unplanned result of field operations); *Scroggins v. State*, 276 Ark. 177, 180, 633 S.W.2d 33, 35–37 (1982); *State v. George*, 210 Neb. 786, 792–93, 317 N.W.2d 76, 80–81 (1982); *State v. Schlothauer*, 206 Neb. 670, 674, 294 N.W.2d 382, 384 (1980); *People v. Beckford*, 427 N.Y.S.2d 908, 911–12 (Sup. Ct. 1980); *see also United States v. Johnson*, 626 F.2d 753, 756–57 (9th Cir. 1980), *aff'd*, 457 U.S. 537 (1982); *People v. Oliver*, 338 N.W.2d 167, 171–76 (Mich. 1983).

We agree with those courts and commentators that have refused to interpret *Santana* as validating all doorway arrests. *See United States v. Johnson supra*; *People v. Beckford supra*; *Warrantless Doorway Arrests—Preemption of Payton v. New York*, 6 HAMLINE L. REV. 585 (1983) (hereinafter cited as Hamline Note). *Santana* may be distinguished from the instant case in two respects: first, the defendant in *Santana* was standing directly *on* the threshold of her door, rather than *inside* it; and second, she was there *when the police arrived*, and not because the police procured her appearance by knocking on her door. *Id.* at 605.

The first distinction is important because of the *Payton* Court's clear language concerning the scope of the fourth amend-

ment: "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. at 590. In the face of the Court's holding that the fourth amendment establishes a "zone of privacy . . . bounded by the unambiguous physical dimensions of an individual's home," *id.* at 589, it becomes very difficult to contend that an individual located entirely within that boundary, as was the defendant here, is in a "public place."

■■ The second distinction is crucial because the "exigency" in *Santana* arose by chance, as a result of the defendant's being in her doorway when the police arrived. In this case, however, any exigency arising from the defendant's retreat was created solely by the police action in knocking on the defendant's door. We note that, although the fourth amendment sometimes permits police to seize incriminating objects that they discover inadvertently, and that are in plain view, it specifically prohibits "the seizure of objects—not contraband nor stolen nor dangerous in themselves—which the police know in advance they will find in plain view and intend to seize," *Coolidge v. New Hampshire*, 403 U.S. 443, 471 (1971), when those objects are on private premises. *Id.* at 474–75.

■■ "Obviously, the 'plain view' of a suspect in the doorway after a knock intended to procure his presence is not an 'inadvertent discovery.'" Hamline Note at 605. And, because the defendant was inside his "home" at all relevant times, there was no "hot pursuit" here, as there was in *Santana*. *Payton* demands for persons, as *Coolidge* demanded for objects, that their pre-planned seizure on private premises, without consent and without any exigency that precludes the delay required to obtain a warrant, be permitted only after a determination of probable cause by a detached, disinterested magistrate. *Payton v. New York*, 445 U.S. at 585–90.

■ Thus, the entry here would be lawful only if the State could prove that the defendant consented to it, *see State v. Bailey*, 417 A.2d 915, 918–19 (R.I. 1980), or "'that it was impracticable for the police to obtain a warrant,'" *Commonwealth v. Huffman*, 430 N.E.2d 1190, 1191 (Mass. 1982) (quoting *Commonwealth v. Forde*, 367 Mass. 798, 800, 329 N.E.2d 717, 719 (1975)).

In this case, the defendant's actions leave no doubt that he did not consent to the police entry. Even if his act of opening the door in response to an anonymous knock could be deemed somehow to create a presumption of consent to entry, that presumption would be re-

butted by his attempt to close the door when he knew who had knocked.

The State offered no substantive evidence to justify the failure of the police to obtain a warrant before going to the defendant's room. The officers had no apparent grounds for a belief that the defendant would escape if not immediately apprehended, or that he would destroy any evidence. *See People v. Oliver*, 338 N.W.2d at 175. Mere speculation about the possibility of destruction of evidence is insufficient to support a claim of exigency, *Commonwealth v. Huffman*, *supra* at 1193; nor is it ever sufficient merely to show that police operations would be more efficient if the warrant requirement were ignored. *Mincey v. Arizona*, 437 U.S. 385, 393–94 (1978).

Recently, the United States Supreme Court stated:

> "Prior decisions of this Court . . . have emphasized that exceptions to the warrant requirement are 'few in number and carefully delineated,' . . . and that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests."

*Welsh v. Wisconsin*, 104 S. Ct. 2091, 2097 (1984) (quoting *United States v. United States District Court*, 407 U.S. 297, 318 (1972)).

This is in accord with the Court's general view of the fourth and fifth amendments, as expressed nearly a century ago:

> "[I]llegitimate and unconstitutional practices get their first footing . . . by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon."

*Boyd v. United States*, 116 U.S. 616, 635 (1886).

Viewed in this light, the facts of this case fall well within the parameters of the *Payton* rule. Accordingly, we hold that the entry of the police into Morse's room was unlawful, and all evidence seized during or as a direct result of that invasion was improperly admitted. We reverse the defendant's conviction and remand the case to the superior court for a new trial.

*Reversed and remanded.*

All concurred.