Cheshire
No. 83-466

THE STATE OF NEW HAMPSHIRE

v.

CARL J. CHAISSON

December 31, 1984

*Gregory H. Smith,* attorney general (*Amy L. Ignatius,* attorney, on the brief and orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J. The defendant was convicted of theft by unauthorized taking, RSA 637:3; burglary, RSA 635:1; and conspiracy to receive stolen property, RSA 629:3, RSA 637:7. He appeals, alleging that the Superior Court (*Wyman,* J.) erred in upholding the validity of the search warrant and the defendant's arrest. We reverse and remand.

At trial the following facts were established. On March 27, 1981, the home of G. Jackson Jones was burglarized and a large quantity of silver and two guns were among the items taken. The next day, Harold Andrews, a coin and silver dealer, received word from Robert LaRue that a large quantity of silver was for sale. LaRue, Andrews and the defendant met later that day at an apartment on Franklin Street in Keene. At the meeting, the defendant showed Andrews some silver which the defendant said was "hot." Andrews told the defendant that the deal was "too big" for him and left.

Andrews then contacted Corporal O'Brien of the New Hampshire State Police, informing him of the meeting, giving him a detailed description of the apartment and naming the defendant as the man in control of the stolen property. Corporal O'Brien relayed this information to Sergeant Hardy of the Keene Police Department. Sergeant Hardy drafted an affidavit, in support of a search warrant, stating the location of the apartment as 49 Franklin Street, Apartment No. 2. The Keene District Court approved the search warrant, authorizing search of the apartment, the cellar under the house and the defendant.

The search, executed by four Keene police officers, commenced at 6:30 p.m. the same day the search warrant was issued. The defendant was not home at the time. In the cellar, the police found silver and firearms matching the description of items stolen from the Jones residence. After these items were found and the rest of the apartment was searched, the search was terminated. Officer LaCoste, however, was instructed by his superior to remain behind at the apartment to wait for the defendant while the other officers returned to the police station with the seized items.

At approximately 8:00 p.m., the defendant knocked on the apartment door. When Officer LaCoste opened the door, the defendant backed away. The officer grabbed the defendant, brought him into the living room and placed him under arrest. At the police station, the defendant made incriminating statements and informed the police where additional items taken from the Jones residence could be found.

The defendant first contends that the supporting affidavit filed by Sergeant Hardy with his application to the Keene District Court for a search warrant contained a material misrepresentation that was recklessly made. If the defendant's contention is correct, the search warrant was invalid, and all evidence obtained as a result of the search should have been suppressed. *State v. Spero*, 117 N.H. 199, 205, 371 A.2d 1155, 1158 (1977). The defendant bases his argument on the State and Federal Constitutions.

The defendant's argument focuses on the reference in the affidavit to the defendant's exact address, 49 Franklin Street, Apartment No. 2. The defendant argues that, contrary to the suggestion created by the affidavit, the informant did not give the police the exact address of the defendant's apartment. Rather, the informant gave a general description of the residence on Franklin Street and, with this information and the assistance of another officer, Sergeant Hardy supplied the exact address. By representing that the informant was the source of the defendant's exact address, the defendant claims that Sergeant Hardy recklessly misrepresented a material fact. The defendant contends that the misrepresentation as to the specificity with which the defendant's residence was described impermissibly bolstered the credibility and reliability of the informant.

The State acknowledges that the house number and apartment number were inserted by Sergeant Hardy and were not provided by the informant. The State disagrees, however, that this insertion constitutes a misrepresentation, in light of the fact that the informant gave the police a detailed description of the premises. The State points to testimony of the police who related that the informant gave them the following information: the street on which the house was

located; the block within that street; the color and distinguishing characteristics of the[ exterior of the house; the location of the defendant's apartment within the house; the location of the driveway that led to the cellar where the stolen goods were stored; and a description of the cellar and the items stored in the cellar. The informant also stated that he would be able to recognize the building if he saw it again, and that the person who showed him the stolen goods at the apartment was the defendant.

■■ The superior court found that the insertion of the actual address was not a material misrepresentation and, in any event, was not done recklessly. The questions whether an affidavit contains a misrepresentation and whether the misrepresentation was material are questions of law, for which this court is ultimately responsible, while the issue of the willfulness or recklessness of the misrepresentation is a question of fact for the trial court, which we will not overturn if the finding is supported by the evidence. *See State v. Chaisson*, 123 N.H. 17, 27–28, 458 A.2d 95, 101 (1983).

There was no misstatement of the fact of the exact address, as it is conceded that the address listed in the affidavit describes the premises the informant visited and the residence of the defendant. We agree with the defendant, however, that in ascribing the exact address to the informant's statement, Sergeant Hardy misrepresented the precision of the informant's statement and, by extension, the informant's credibility. We do not view this misrepresentation as material with respect to the issue of the informant's credibility because there remain in the affidavit sufficient recitals to attest to the informant's reliability and because an accurate rendition of the information supplied by the informant on this point would not have detracted from the informant's credibility. *Cf. State v. Spero*, 117 N.H. 199, 203–04, 371 A.2d 1155, 1158 (1977) (misstatement in affidavit of exact address found to be material where the informant's information was imprecise with respect to the defendant's residence).

■ Because we rule that the misrepresentation was not material, we need not address the question whether the misrepresentation was made recklessly. We hold under our State Constitution, part I, article 19, that the affidavit in question supplied a sufficient basis for a finding that the informant was reliable and that probable cause existed. *See State v. Spero supra*. The Federal Constitution does not dictate a different result. *See Illinois v. Gates*, 103 S. Ct. 2317 (1983); *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

■ Next, the defendant contends that his warrantless arrest vio-

lated both the Federal and the State Constitutions and that the fruits of that arrest, therefore, should have been suppressed at trial. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963). We, of course, address the State constitutional issues first. *See State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 350 (1983). In construing the State Constitution, we refer to Federal constitutional law as only the benchmark of minimum constitutional protection. *See State v. Osborne*, 119 N.H. 427, 433, 402 A.2d 493, 497 (1979).

The defendant's claim arises under part I, article 19 of the New Hampshire Constitution and the fourth amendment of the United States Constitution. The New Hampshire Constitution provides that "every subject hath a right to be secure from all unreasonable searches and seizures of his person [and] his houses . . . ." N.H. CONST. pt. I, art. 19. The fourth amendment provides that "the right of the people to be secure in their persons [and] houses . . . against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend IV. Both of these provisions afford a citizen protection from unreasonable governmental interference with his person and from unreasonable governmental invasion of the privacy of his home. We review the facts before addressing the defendant's claim under these provisions.

The defendant encountered the police when he came home to his apartment. Upon his return, he knocked on his apartment door. The door was opened by Officer LaCoste, who had been waiting inside for the defendant to return. After seeing the officer, the defendant took a step backwards. The officer then reached through the doorway, took the defendant by the arm, and walked him inside into the living room. Once both were inside the apartment, Officer LaCoste advised the defendant that he was under arrest, conducted a pat down search of the defendant, handcuffed him, and called headquarters for assistance. The two remained in the apartment until the requested assistance arrived.

At the time of the arrest, the arresting officer was inside the threshold of the defendant's home, while the defendant was outside. Typically, it is the officer, not the suspect, whose knock on the door of a home sets the arrest process in motion. *See, e.g., State v. Morse*, 125 N.H. 403, 480 A.2d 183 (1984) (police arrested defendant when he responded to knock on his motel room door). We have neither found nor been directed to a factually analogous case. This unique configuration of facts presents us with a rather novel question of law.

The arguments advanced by both the State and the defendant assume that Officer LaCoste's presence in the apartment needed to

be supported by a warrant to withstand constitutional scrutiny. Before addressing the merits of these arguments, we must consider whether the facts of this case fall within one of the exceptions to the warrant requirement; namely, whether this arrest occurred in a public place.

■■ There is authority to support the argument that this case falls within an exception to the warrant requirement. A warrantless arrest in a public place is reasonable if it is supported by probable cause. *See United States v. Watson*, 423 U.S. 411, 417, 423–24 (1976). "The common areas of an apartment building, even if they are normally kept locked, are not places in which tenants have a reasonable expectation of privacy." *United States v. Moore*, 463 F. Supp. 1266, 1270 (S.D.N.Y.), *rev'd on other grounds*, 613 F.2d 1029 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 954 (1980); *see also United States v. Luschen*, 614 F.2d 1164, 1173 (8th Cir.), *cert. denied*, 446 U.S. 939 (1980). The defendant was seized in the outside hallway before he entered the apartment. Hence, it could be argued that the arrest before us occurred in a public place and consequently was not subject to the warrant requirement.

This argument must be rejected for three fundamental reasons. First, the argument ignores a citizen's right to be free from unreasonable governmental invasions of the privacy of his home. Second, the argument incorrectly defines what constitutes the location of an arrest. Third, sustaining this argument would undermine recent decisions of this court and the United States Supreme Court. Due to the importance of these issues, we consider them in turn.

Protection of the privacy of the home is of central importance in the law of search and seizure. The United States Supreme Court has repeatedly stressed this fact. In *United States v. United States District Court*, 407 U.S. 297, 313 (1972), for example, the Court stated that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed . . . ." And in *Payton v. New York*, 445 U.S. 573, 587 (1980), the Court opined: "Freedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment." *Id.* (quoting *Dorman v. United States*, 435 F.2d 385, 389 (D.C. Cir. 1970)).

■ Both the New Hampshire and the Federal Constitutions afford the home solicitous protection. *See, e.g., Payton v. New York, supra* at 576 (Federal Constitution prohibits warrantless arrest of suspect at his home, absent consent or exigent circumstances); *State v. Theodosopoulos*, 119 N.H. 573, 580, 409 A.2d 1134, 1138 (1979) ("The warrant requirement [under the Federal and State Constitu-

tions] is particularly stringent for a search of a private dwelling, in which the occupant has a strong expectation of privacy and protection from government intrusion."), *cert. denied*, 446 U.S. 983 (1980).

The constitutional protections against unreasonable searches and seizures "apply to all invasions on the part of the government and its employes of the sanctity of a man's home . . . ." *Boyd v. United States*, 116 U.S. 616, 630 (1886). LaCoste remained in the defendant's apartment for the purpose of arresting the defendant when he came home. LaCoste's conduct, although physically passive, constituted a search for the defendant within his home. *See Morrison v. United States*, 262 F.2d 449, 452 (D.C. Cir. 1958); *see also Dorman v. United States*, 435 F.2d 385, 390, 391 (D.C. Cir. 1970). The warrant requirement was therefore applicable.

The second reason we reject the argument that this arrest was not subject to the warrant requirement because it occurred in a public place is that the argument incorrectly states what constitutes the location of an arrest. The argument achieves its conclusion by implicitly finding that the location of an arrest is determined solely by the location of the suspect when he is seized, without reference to the location of the seizing officer. This proposition is inconsistent with settled law.

In determining *whether an arrest has occurred,* the conduct of the arresting officer, as well as that of the arrestee, must be considered. *See State v. Lemire*, 121 N.H. 1, 4, 424 A.2d 1135, 1137 (1981) (officer's and arrestee's state of mind considered); *United States v. Mendenhall*, 446 U.S. 544, 553–57 (1980) (totality of surrounding circumstances considered). In determining *where an arrest has occurred,* logic requires that we likewise consider the conduct of both the officer and the suspect. To ignore the officer's presence in determining the arrest location is simply to ignore the reality of the situation. Accordingly, we must treat the arrest in the instant case as one within the defendant's home to the extent that Officer LaCoste was within the home at that time.

The final reason we reject the proposition that this arrest occurred in a public place and was therefore not subject to the warrant requirement is that the argument's acceptance would undermine recent decisions of this court and the United States Supreme Court. In *Payton v. New York*, 445 U.S. 573, 576 (1980), the Supreme Court held that, absent exigent circumstances or consent, the police must obtain a warrant to enter a suspect's home to arrest him. In *State v. Morse*, 125 N.H. 403, 409, 480 A.2d 183, 187 (1984), we held that a warrant was required to make a routine felony arrest of a suspect who opened his door in response to a knock on the door

by the police. We observed: "*Payton* demands for persons . . . that their pre-planned seizure on private premises, without consent and without any exigency that precludes the delay required to obtain a warrant, be permitted only after a determination of probable cause by a detached, disinterested magistrate." *Id.* at 408, 480 A.2d at 187.

A holding that the arrest in the instant case occurred in a public place and therefore was not subject to the warrant require- ment would be inconsistent with these cases. Such a holding would allow police to make a warrantless entry of a suspect's home, to wait inside, and then to make an arrest, as long as the suspect was arrested before, but not after, he crossed his own threshold. "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961). This right would be vitiated if police were allowed to lie in wait within the home to arrest a suspect just before he crossed the threshold.

Since we find that the arrest of the defendant was subject to the warrant requirement of our State Constitution, we next consider whether a warrant authorized the arrest.

The State argues that because the police were lawfully on the premises pursuant to a search warrant, they could seize the de- fendant when he came home. We agree that if the police, while law- fully on the premises, discover probable cause and arrest a suspect, then that seizure is lawful. *State v. Sorrell*, 120 N.H. 472, 476, 416 A.2d 1375, 1378 (1980); *State v. McComb*, 111 N.H. 312, 314, 282 A.2d 673, 675 (1971); *see also State v. Sweeney*, 124 N.H. 396, 400, 469 A.2d 1362, 1364 (1983). The issue, therefore, is whether the police were still lawfully on the premises during the arrest of the defendant.

On appeal, the State contends that Officer LaCoste remained in the apartment because the search of the apartment had not been completed. However, at the suppression hearing before trial, the State stipulated to the court that Officer LaCoste "was an officer participating in a search conducted at that residence earlier on that day and was requested by his superior to remain there to await the return of Mr. Carl Chaisson." The trial court based its pre-trial rul- ing on this stipulation. On appeal, the State is bound by this stipula- tion.

The police, in executing a search warrant for a dwell- ing, may remain on the premises only so long as it is reasonably necessary to conduct the search. *See State v. Williams*, 169 Conn. 322, 330, 363 A.2d 72, 77 (1975) (reasonableness of duration deter-

mined by circumstances of each case). "[O]nce a search warrant has been fully executed and the fruits of the search secured, the authority under the warrant expires and further governmental intrusion must cease." *United States v. Gagnon*, 635 F.2d 766, 769 (10th Cir. 1980), *cert. denied*, 451 U.S. 1018 (1981).

In this case, at the time of the defendant's arrest, the police officer was on the premises merely to await the defendant's return and was not conducting or waiting to resume the search pursuant to the search warrant. In fact, Officer LaCoste was watching television while he waited. Thus, absent consent or exigent circumstances, the police were not lawfully on the premises when the arrest occurred. No distinction exists between an illegal entry and an illegal remaining on the premises, and therefore the State should have obtained a warrant before arresting the defendant. *People v. Boehm*, 89 Ill. App. 3d 176, 178, 411 N.E.2d 1192, 1193 (1980). *See* RSA 635:2, I (1974).

Additionally, the search warrant, although it authorized a search of the defendant's person, did not empower the police to remain on the premises to await his return. To execute a search *of* the defendant, the police may search *for* him only in a reasonable manner. *See Lohman v. Superior Court, County of San Diego*, 138 Cal. Rptr. 403, 408–09 (Cal. Ct. App. 1977). Once the police determined that the defendant was not on the premises, and since the defendant had not returned while the police were searching the apartment, it was not reasonable for them to await his return. Although it may have been more convenient and comfortable for the police to wait for the defendant inside his home, watching his television, "the right to be secure against unreasonable searches and seizures is not to be diminished or diluted on the grounds of convenience or expediency." *State v. Laro*, 106 N.H. 500, 503, 213 A.2d 909, 911 (1965).

Because the government had no authority to infringe upon the defendant's constitutional right to be free from unreasonable seizures, any evidence obtained in violation of this right cannot be used at trial. *See State v. Tapply*, 124 N.H. 318, 325, 470 A.2d 900, 905 (1983).

We need not reach this issue under the Federal Constitution because of our holding sustaining a citizen's liberty claim under the State Constitution. *See State v. Cadman*, 476 A.2d 1148, 1150 (Me. 1984). We reverse and remand for a new trial.

*Reversed and remanded.*

All concurred.