USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________ No. 95-1814 JOANNE JOYCE, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JAMES D. JOYCE, Plaintiff, Appellant, v. TOWN OF TEWKSBURY, MASSACHUSETTS, JOHN R. MACKEY, ALFRED DONOVAN AND ROBERT BUDRYK, Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ Selya, Boudin, Stahl and Lynch, Circuit Judges. ______________ ____________________ April 29, 1997  ____________________ OPINION EN BANC ____________________ Robert LeRoux Hernandez with whom Law Offices of Robert L. ________________________ ____________________________ Hernandez were on brief for appellant. _________ Larry W. Yackle with whom John Reinstein was on brief for _________________ _______________ American Civil Liberties Union of Massachusetts, amicus curiae. Leonard H. Kesten with whom Deidre Brennan Regan, Kurt B. ___________________ ______________________ ________ Fliegauf and Brody, Hardoon, Perkins & Kestin were on brief for ________ ___________________________________ appellees. Per Curiam. We are concerned on this appeal with the __________ decision of the district court granting summary judgment on one of the several claims that have been litigated in this case, specifically, a claim that police entry into a house without a search warrant violated the Fourth Amendment. Review is de novo and the facts are set forth in the light _______ most favorable to the party opposing summary judgment. Le __ Blanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), _____ __________________ cert. denied, 511 U.S. 1018 (1994). ____________ Late on the evening of August 6, 1989, officers Alfred Donovan and Robert Budryk arrived at the home of Joanne and James Joyce ("the Joyces") in Tewksbury, seeking to arrest the Joyces' son, Lance Joyce. Although Lance did not live with his parents, the police had received a call earlier in the evening from Lance's ex-girlfriend informing them that he was there. Allegedly, an outstanding warrant existed for Lance's arrest on a charge of violating a chapter 209A domestic restraining order. Mass. Gen. Laws ch. 209A, 7. Lance answered the officers' knock at the Joyces' side door, opening the interior door but keeping the outer screen door closed. Officer Budryk told Lance that the officers had a warrant for his arrest, and asked him to step outside. Instead, Lance retorted "ya right" and withdrew from the doorway, calling for his mother. The police followed him. Joanne Joyce, who had been asleep, then came downstairs to -2- -2- find her son and the police officers standing in her dining room. Her husband entered the room a few minutes later. The Joyces asked the officers what was going on and whether they had a warrant; the officers explained that they were there to arrest Lance and that a warrant for his arrest existed, although they did not have it with them. James Joyce left the room with a third officer (who had arrived separately) to call the police department, which confirmed Donovan and Budryk's understanding that there was an outstanding warrant for Lance's arrest. While her husband was gone, a scuffle ensued between the police officers and Joanne Joyce. Joanne Joyce admits that she protested Lance's immediate arrest, although she denies pushing the police officers away. One of the officers grasped Joanne Joyce's upper arms and moved her aside, allowing them to handcuff Lance and secure his arrest; Joanne Joyce claims that one of the officers threatened to kill her unless she got out of the way. Joanne Joyce was charged with assault and battery but acquitted in a state court jury trial in February 1990. In April 1990, the Joyces brought suit alleging that the officers, the chief of police and the town had violated 42 U.S.C. 1983 and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, 11I. The section 1983 claims were based upon alleged violations of the Fourth and Fourteenth -3- -3- Amendments during the officers' entry without a search warrant into the Joyce home and claimed use of excessive force in arresting Lance Joyce. The Joyces also claimed that the officers had committed assault and battery, intentional infliction of emotional distress and malicious prosecution, and that the town had negligently trained and supervised the officers in violation of the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258. The defendants moved for summary judgment on the issue of illegal entry. Citing United States v. Santana, 427 U.S. _____________ _______ 38 (1976), they said that the police had not violated the Fourth Amendment because they entered the Joyce home in pursuit of Lance Joyce whom they were in the process of lawfully arresting. The district court granted defendants' motion by margin order, explaining that "[t]here is no evidence in the record to support [that] the entry was in violation of the Fourth Amendment." A jury trial followed. The record indicates that only three of the remaining claims were presented at trial: a section 1983 claim alleging that the officers had violated the Fourth Amendment by using excessive force to arrest Lance Joyce, causing his mother injury; a malicious prosecution claim; and a Massachusetts Civil Rights Act claim based on the alleged threat by the officers to Joanne Joyce during the -4- -4- altercation. The jury returned a verdict for the defendants on all counts.  Joanne Joyce then appealed on her own behalf and as executrix of the estate of James Joyce. She asked not only for reversal of the summary judgment grant on the illegal entry claim but also for a new trial on the other claims, arguing that the trial of the latter claims was tainted because the jury was not allowed to consider unlawful entry as one of the circumstances incident to the excessive force, malicious prosecution and MCRA claims. A panel of this court affirmed the district court's grant of summary judgment. Joanne Joyce then petitioned for rehearing en banc, _______ supported by the American Civil Liberties Union as amicus ______ curiae. Both urge that the officers' entry, without a search ______ warrant, violated the Fourth Amendment; they distinguish Santana on the ground that the suspect there was standing in _______ public space (just outside her house) when the police engaged her, while Lance Joyce was inside his parents' home throughout. Joyce also argues that the underlying offense, violation of a restraining order, is not a felony under Massachusetts law. In considering the petition for rehearing en banc, we ________ concluded that the claim against the officers might be foreclosed by qualified immunity. Accordingly, we requested supplemental memoranda. Having considered the memoranda, we -5- -5- have decided to grant rehearing en banc, withdraw the panel _______ opinion, and substitute this opinion as the en banc court's ________ resolution of the appeal. Because qualified immunity turns primarily on an appraisal of existing case law, oral argument has been deemed unnecessary. When the police enter the home of the person they wish to arrest, the arrest warrant suffices for entry if "there is reason to believe the suspect is within." Payton v. New ______ ___ York, 445 U.S. 573, 603 (1980). But even when armed with an ____ arrest warrant, police must generally have a search warrant to enter lawfully a third person's home. Steagald v. United ________ ______ States, 451 U.S. 204, 212-13 (1981). However, a third ______ person's house may be lawfully entered without a search warrant if exigent circumstances exist, Steagald, 451 U.S. at ________ 213-14, and exigent circumstances include "hot pursuit." Santana, 427 U.S. at 42-43; Hegarty v. Somerset County, 53 _______ _______ _______________ F.3d 1367, 1374 (1st Cir.), cert. denied, 116 S. Ct. 675 ____________ (1995).  Here, the defendants claim that Santana justified their _______ entrance into the Joyce home because they were in hot pursuit of Lance Joyce. Joanne Joyce and the ACLU respond that police first engaged Santana when she was outside her home, _______ standing directly on her threshold. Ultimately, they argue that to uphold the entry in this case creates a slippery slope, allowing the police to enter without a search warrant -6- -6- if the police merely suspect that the person sought is inside the house. The governing case law under the Fourth Amendment does not yield very many bright line rules. This is not surprising since the ultimate touchstone is one of reasonableness: the hot pursuit is only one of several well- established examples of "exigent circumstances" that make it reasonable for the police to enter without obtaining a search warrant. See Minnesota v. Olsen, 495 U.S. 91, 100 (1990); ___ _________ _____ Hegarty, 43 F.3d at 1374. Conversely, we are not impressed _______ by the slippery slope argument: entry where an arrest is not already in progress, or where the offense is truly trivial, would present quite a different case. But even within this reasonableness framework, the present case is not entirely straightforward. Santana's _______ exception likely does not turn on whether the individual is standing immediately outside or immediately inside the house when the police first confront him and attempt an arrest. And, the fact that Massachusetts classifies the alleged violation here as a misdemeanor does not reduce it to a "minor offense," see Welsh v. Wisconsin, 466 U.S. 740, 753 ___ _____ _________ (1984); we agree with the panel that "domestic violence and violations of protective orders are among the more grave offenses affecting our society." -7- -7- On the other hand, we have no information as to whether Lance Joyce's conduct that gave rise to the protective order involved actual violence, although the police may have had some basis for concern apart from the protective order.1 We have ourselves suggested that certain "mitigating factors" may undermine an exigency showing, including any inadequacy in the opportunity afforded for a peaceable surrender and the fact that entry occurs at nighttime. Hegarty, 43 F.3d at _______ 1374. So, there are arguments to be made on both sides.  The Supreme Court cases, with Steagald at one pole and ________ Santana at the other, do not definitively resolve our own _______ case. Even a quick review of lower court cases reveals that there is no settled answer as to the constitutionality of doorway arrests. See State v. Morse, 480 A.2d 183, 186 (N.H. ___ _____ _____ 1984) (collecting cases); 3 W. LaFave, Search and Seizure  __________________ 6.1(e) (3d ed. 1996) (same). Circuit court precedent is also divided, with some decisions helpful to the police in this case and others less so.2   ____________________ 1The police officers' testimony at trial indicated that Lance had a drinking problem (information which was corroborated by Mrs. Joyce's testimony), had been placed in protective custody ten or eleven times and arrested once or twice by the Tewksbury police, had resisted arrest or tried to escape on prior occasions, and that officer Donovan had been involved in a few of the earlier incidents. 2Compare, e.g., United States v. Rengifo, 858 F.2d 800, _____________ _____________ _______ 804-05 (1st Cir. 1988), cert. denied, 490 U.S. 1023 (1989) ____________ and United States v. Carrion, 809 F.2d 1120, 1123, 1128 & n.9 _________________ _______ (5th Cir. 1987) with United States v. McCraw, 920 F.2d 224, ____ _____________ ______ 229-30 (4th Cir. 1990) and United States v. Curzi, 867 F.2d ___ _____________ _____ -8- -8- Given the unsettled state of the law, we have no hesitation in concluding that the officers in this case are protected by qualified immunity which protects public officials against section 1983 liability so long as they acted reasonably. Hunter v. Bryant, 502 U.S. 224, 228 ______ ______ (1991); Anderson v. Creighton, 483 U.S. 635, 639 (1987). As ________ _________ the Supreme Court has said, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. ______ ______ 335, 341 (1986). The aim is to protect those who might otherwise be deterred from official duties for fear that an innocent mistake would create personal liability. The critical point here is that officers Donovan and Budryk are "entitled to qualified immunity [so long as] their decision was reasonable, even if mistaken." Hunter, 502 U.S. ________________ ______ at 229 (emphasis added); see Veilleux v. Perschau, 101 F.3d ___ ________ ________ 1, 3 (1st cir. 1996). Thus, the officers are not liable unless in the circumstances of this case it is reasonably well-established, and should therefore have been clear to the officers, that the entry without a search warrant was unlawful. Because it is not even clear that there was a violation--a point that we do not decide--there certainly was no violation so patent as to strip the officers of qualified immunity.  ____________________ 36, 40 (1st Cir. 1989).  -9- -9- The Joyces also sued the town under section 1983, alleging that its failure to properly train and supervise the officers resulted in their unlawful entry of her home. Municipal liability under section 1983 is not vicarious, see ___ St. Louis v. Prapotnik, 485 U.S. 112, 128 (1988), and __________ _________ municipalities do not enjoy qualified immunity, Owen v. City ____ ____ of Independence, 445 U.S. 622, 650 (1980). Consequently, it _______________ is not impossible for a municipality to be held liable for the actions of lower-level officers who are themselves entitled to qualified immunity. Walker v. Waltham Housing ______ _______________ Auth., 44 F.3d 1042, 1047 (1st Cir. 1995).  _____ However, our rationale here for granting qualified immunity to the officers--that the unsettled state of the law made it reasonable to believe the conduct in this case constitutional--also precludes municipal liability. Tewksbury could not have been "deliberately indifferent" to citizens' rights, Bowen v. City of Manchester, 966 F.2d 13, _____ ___________________ 18 (1st Cir. 1992), in failing to teach the officers that their conduct was unconstitutional. We need not decide whether the Joyces have pointed to evidence suggesting that the officers' conduct was endorsed by a municipal policy. See St. Hilaire v. City of Laconia, 71 F.3d 20, 29 (1st Cir. ___ ___________ _______________ 1995), cert. denied, 116 S. Ct. 2548 (1996). ____________ There is some cost in not deciding the Fourth Amendment issue on the merits, even in the form of dictum. But the en __ -10- -10- banc court is agreed that qualified immunity applies, and ____ there is less consensus about the underlying constitutional issue. Indeed, some members of the en banc court consider ________ that Donovan and Budryk's entry into the Joyce home was of very doubtful legality under the Fourth Amendment. Resolution can properly await a case where the issue is decisive, as it could easily be on a suppression claim where qualified immunity does not apply. The panel opinion is withdrawn and, for the reasons _________ given above, the judgment of the district court is affirmed ________ on grounds of qualified immunity. Concurrence follows. ___________________ -11- -11- TORRUELLA, Chief Judge (concurring). Resolving this TORRUELLA, Chief Judge (concurring).  ___________ damages suit on qualified immunity grounds is entirely appropriate, because the parties exercised the opportunity to brief this issue, and because the issue of qualified immunity can be "resolved with certitude on the existing record." United ______ States v. La Guardia, 902 F.2d 1010, 1013 (1st Cir. 1990) ______ ___________ (appellate court has discretion, in the exceptional case, to "reach virgin issues"); see also Nat'l Ass'n of Social Workers _________ ______________________________ v. Harwood, 69 F.3d 622, 627 (1st Cir. 1995). One would think _______ that a Fourth Amendment right cannot possibly be deemed "clearly established" from the point of view of the defendant police officers when a total of seven judges, including the district court, the appellate panel, and finally the en banc First Circuit court, are themselves in disagreement as to the precise scope of that right.  I write separately, however, only because I believe that my dissenting brothers, in their efforts to show how Steagald v. United States, 451 U.S. 204 (1981) is controlling, ________ _____________ have lost sight of the touchstone of Fourth Amendment law, which is reasonableness. See U.S. Const. Amend. IV ("The right of the ___ people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be ____________ violated . . . .") (emphasis added). Our strong and deep-seated intuitions regarding the sanctity of the home obviously inform the determination of what kinds of searches are, and are not, reasonable. We follow the Supreme Court's lead in these -12- -12- difficult determinations, but where the unique facts of a case do not fall squarely under any one Supreme Court precedent, as here, we cannot help but consider the reasonableness of the particular search at issue. We know from Santana that it may be reasonable to _______ follow a fleeing suspect from the threshold of a private residence into that residence, without a search warrant, for the purpose of effectuating an arrest. Santana, 427 U.S. at 43 ("[A] _______ suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper under [United States v. ______________ Watson, 423 U.S. 411 (1976)], by the expedient of escaping to a ______ private place."). We also know from Steagald that it is ________ certainly not reasonable to simply enter a third party's ___ residence without a search warrant, in the absence of exigent circumstances, in the belief that the subject of an arrest warrant is inside. One may seek to subsume the present case under either Santana or Steagald -- but either way, this _______ ________ requires that we draw some conclusions regarding their scope. In drawing the outlines of the "exigent circumstances" or "hot pursuit" exception, I find myself naturally turning to reasonableness. The precise question, then, is whether it is reasonable for police officers, who are acting on an arrest warrant arising from the commission of a jailable offense, who are standing a few feet away from, and face-to-face with, the subject of that arrest warrant (separated only by a transparent -13- -13- outer screen door), who have informed the same subject that he must step outside because he is under arrest, and who then find that the arrestee refuses to cooperate and retreats into the residence, to follow that arrestee into the house in order to effectuate the arrest. (And add to this the fact that although the residence belonged technically to a third party, a suspect's parents' residence is often looked upon as approximating his own residence.) Because I believe, on these facts, that the officers' entry and arrest was reasonable, I conclude that this case falls under the "hot pursuit" rationale discussed in Santana. Let us not lose sight of reasonableness in our efforts _______ to follow precedents that are, on occasion, not clearly determinative. This said, it may be that this particular damages suit, with its spotty record, is not the best context in which to define those "exigent circumstance" parameters on the merits. I am confident, moreover, that these defendants are fully entitled to qualified immunity. After all, this is not a case in which ___ the police entered an unrelated third-party's home in search of an arrestee without any process at all -- such action would clearly violate Steagald -- although some members of this court ________ may question whether the process that was followed here was enough to satisfy the Fourth Amendment. Concurrence follows. ___________________ -14- -14- LYNCH, Circuit Judge (concurring). While I am LYNCH, Circuit Judge (concurring). ______________ sympathetic to the very strong arguments that the police violated the Fourth Amendment, I join the per curiam. That the judges of this court so strongly disagree about whether there was a Fourth Amendment violation means that the law in this area is not so clearly established as to make the officers' actions objectively unreasonable. Anderson v. ________ Creighton, 483 U.S. 635 (1987); St. Hilaire v. City of _________ ____________ _______ Laconia, 71 F.3d 20 (1995). The officers are entitled to _______ immunity, given the state of the law in 1989. Dissent follows. _______________ -15- -15- SELYA, Circuit Judge, with whom STAHL, Circuit SELYA, Circuit Judge, with whom STAHL, Circuit _____________ _______ Judge, joins (dissenting). Though the Fourth Amendment has Judge, joins (dissenting). _____ fallen on hard times, a woman's home remains her castle. The en banc court, seeking cover under the doctrine of qualified immunity (a doctrine which, as I understand it, was neither briefed nor argued to the panel), effectively condones an unconstitutional encroachment on the sanctity of the home. Although I applaud the withdrawal of the panel opinion, I cannot in good conscience join the opinion of the en banc court; that opinion admittedly edges closer to the holding demanded by clearly established law, but stops short of adhering to it and, thus, perpetuates a constitutionally intolerable result. Respectfully and regretfully, I dissent. As the en banc court faithfully relates, the doctrine of qualified immunity protects state actors whose actions are reasonable, if mistaken. But qualified immunity does not shield violations of clearly established constitutional principles merely because the specific factual situation in which a violation arises has novel features. As the Supreme Court recently noted in the immunity context, "general statements of the law are not inherently incapable of giving fair and clear warning, . . . a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not -16- -16- previously been held unlawful." United States v. Lanier, 117 _____________ ______ S. Ct. 1219, 1227 (1997) (citation, brackets, and internal quotation marks omitted). This is exactly such a case. In the absence of exigent circumstances and nothing in the instant record suggests any exigency, let alone demonstrates exigency to an extent that might carry the day on summary judgment the Fourth Amendment prohibits a warrantless, non-consensual entry by the police into a suspect's home in order to arrest him. See Payton v. New ___ ______ ___ York, 445 U.S. 573, 576 (1980). Of course, once the police ____ procure a valid arrest warrant, they may enter the suspect's home for the limited purpose of effecting the arrest. See ___ id. at 603. But even then, the police may not enter a third ___ _ _____ person's home without consent, a search warrant (in ________ ____ contradistinction to an arrest warrant), or exigent circumstances. See Steagald v. United States, 451 U.S. 204, ___ ________ _____________ 205-06, 212-15 (1981). In this case the police transgressed the clearly established rule laid down by the Steagald Court. The ________ plaintiff, Joanne Joyce, was not herself a suspect. Yet the defendant officers entered her home without her consent, without a search warrant, and in the absence of any exigent circumstances. To be sure, the defendants had an arrest warrant for the plaintiff's son, Lance Joyce, but that is scantconsolation becauseLance didnot livein hismother's home. -17- -17- In stitching together a qualified immunity defense from this poor-quality cloth, the en banc court relies heavily indeed, almost exclusively on United States v. ______________ Santana, 427 U.S. 38 (1976). The court's reliance strikes me _______ as misplaced. Santana is an "exigent circumstances" case; it _______ stands only for the proposition that when the police confront a suspect whom they have probable cause to arrest in a public __ _ ______ place, and the suspect subsequently flees into her own home, _____ they may pursue and arrest her. See id. at 42-43. That ___ ___ proposition has no application here for two reasons (each of which is independently sufficient to defenestrate the en banc court's reasoning). First, under Steagald, warrantless non-consensual ________ searches of a third person's home are only excused by exigent circumstances. 451 U.S. at 205-06. Santana involved exigent _______ circumstances: the hot pursuit of a fleeing suspect from a public place into a private one. 427 U.S. at 42-43. In this case, by contrast, there is simply no evidence of any need for pursuit hot, cold, or lukewarm. Certainly, the mere fact that Lance Joyce, prompted by police action, moved from one part of his mother's home to another did not create any cognizable exigency. See United States v. Curzi, 867 F.2d ___ _____________ _____ 36, 40-43, 43 n.6 (1st Cir. 1989) (explaining that police officers cannot use exigent circumstances that they have created to justify a warrantless search). -18- -18- Second, and equally important, the record is pellucid that Lance was not in a public place when the officers first confronted him; although he opened an interior door, he remained completely within the house and kept an exterior weather door between himself and the officers entirely shut. While the en banc court blithely asserts that Santana does not turn on whether the individual whom the _______ police desire to apprehend is inside or outside a house when the first contact occurs, this distinction makes every bit of difference.3 The rule prohibiting warrantless invasions of third parties' homes emerged in Steagald, a case that ________ followed and interpreted Santana. Rather than extending _______ Santana, Steagald, 451 U.S. at 214 n.7, 222, reinforces _______ ________ Payton, a case in which the Supreme Court concluded that ______ "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." 445 U.S. at 585 (citation omitted). Consequently, "the Fourth Amendment has drawn a firm line at the entrance to the house." Id. at 590. The Constitution does not equivocate on ___  ____________________ 3. Recent Supreme Court case law confirms that police action directed at individuals within the confines of a dwelling is subject to intense constitutional scrutiny. The constitutional requirement to "knock and announce," established in Wilson v. Arkansas, 115 S. Ct. 1914, 1915-16 ______ ________ (1995), pertains only when the subject of the arrest warrant is within a dwelling. The elevation of this requirement to constitutional status can only be understood in terms of the special protection granted those persons who are within a private home's confines when the police first arrive on the scene. -19- -19- this point. See United States v. Berkowitz, 927 F.2d 1376, ___ _____________ _________ 1388 (7th Cir. 1991) ("Payton did not draw the line one or ______ two feet into the home; it drew the line at the home's entrance."); State v. Morse, 480 A.2d 183, 186 (N.H. 1984); 3 _____ _____ W. LaFave, Search and Seizure 6.1(e) (3d ed. 1996). Nor ___________________ should we. In sum, I believe that the officers' entry into a third party's home in the absence of consent, a search warrant, or exigent circumstances plainly violated Steagald ________ and thus violated the homeowner's clearly established Fourth Amendment rights. See United States v. McCraw, 920 F.2d 224, ___ _____________ ______ 228-29 (4th Cir. 1990) (rejecting use of Santana when door to _______ dwelling was only partially opened from within). By hedging on this point, the en banc court not only denies the plaintiff her day in court but also invites the proliferation of such incidents. Since we will be seen as sanctioning that which we are unwilling to condemn, I respectfully dissent. -20- -20-